**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 |
|  | ) |  |
| ANDREA KLIKA, | ) | Case No. 05-10707 (MFW) |
|  | ) |  |
| Debtor. | ) |  |

**MEMORANDUM OPINION**[1]

Before the Court is the First and Final Verified Application of Adelman Lavine Gold Schildhorn and Kleban, a Professional Corporation, for Compensation and for Reimbursement of Expenses as Counsel to the Chapter 7 Trustee for the Period from December 12, 2005, through April 30, 2007 (the "Fee Application"). Andrea Klika (the "Debtor") filed an Objection to the Fee Application. For the reasons stated below, the Court will overrule the Objection and grant the Fee Application.

I.   BACKGROUND

On March 11, 2005, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. At a December 8, 2005, hearing the Court granted the Motion of the United States Trustee (the "UST") to convert the case based, in part, on the Debtor's failure to disclose that American Transactions, Inc.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

("ATI"), a corporation owned by her and listed by her as valueless on her bankruptcy schedules, had collected an account receivable in excess of $115,000.

Following the hearing on the motion to convert, but before a trustee was appointed, the Debtor made numerous purchases and withdrawals (totaling $12,169.71) and issued several checks (totaling $5,909.84) from ATI's two business accounts.  This was done despite the Court's direction to the Debtor at the hearing that the funds were not to be used.

On December 12, 2005, George L. Miller (the "Trustee") was appointed.  On December 19, 2005, the Trustee filed an application to retain as counsel Adelman Lavine Gold and Levine, a Professional Corporation ("Adelman Lavine").  There was no objection, and the Court granted the application on January 6, 2006.

On April 5, 2007, the Trustee filed an application to retain Dilworth Paxson LLP ("Dilworth") as substitute counsel.  As explained in that application, Adelman Lavine had changed its name to Adelman Lavine Gold Schildhorn and Kleban, a Professional Corporation, and had then dissolved.  Because the Adelman Lavine attorneys who had been representing the Trustee joined a firm with a conflict of interest, the Trustee elected to retain Dilworth instead.  There was no objection to the Dilworth retention application; it was granted by Order dated May 8, 2007.

On October 25, 2007, Adelman Lavine filed the Fee Application which seeks fees in the amount of $58,273.40 and expenses in the amount of $2,682.93. On November 14, 2007, the Debtor filed an Objection to the Fee Application. At the hearing on the Fee Application held on December 5, 2007, the Court granted the Debtor's request for a continuance for the purposes of obtaining discovery related to the Fee Application.[2] On December 19, 2007, the Debtor filed the Written Motion and Request for Discovery and Notice to Produce and Demand for Relief with Respect to the Fee Application (the "Discovery Motion"). On January 16, 2008, Adelman Lavine filed its Responses and Objections to the Discovery Motion. A hearing on the Discovery Motion and the Fee Application was held on February 6, 2008. After hearing arguments on the Discovery Motion, the Court denied it. After hearing arguments on the Fee Application, the Court held it under advisement. The matter is ripe for decision.

II. <u>JURISDICTION</u>

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (M), & (O).

---

[2] As she has with respect to virtually every pleading filed in this case, the Debtor asserted in her Objection that proper notice was not given to her. To the extent that objection had any validity, the continuance of the hearing cured that defect.

III. <u>DISCUSSION</u>

    A.   <u>Discovery Motion</u>

At the hearing, the Court reviewed the Debtor's discovery requests to which the Debtor asserted Adelman Lavine had not responded. Many of the requests were vague and facially appeared irrelevant or unlikely to lead to relevant information. When the Court asked the Debtor to explain her requests, the Debtor became defensive and reverted to long harangues about her unjust treatment by the Trustee, principally the Trustee's efforts to collect the ATI funds.

After hearing the Debtor's arguments and reviewing the Discovery Motion and Adelman Lavine's responses, the Court found that Adelman Lavine had, contrary to the Debtor's contentions, responded to most of the requests. For example, Adelman Lavine responded to the Debtor's request for all documentation evidencing an interest in any debt due from the Debtor by producing a copy of the Fee Application and its retention application, including the declaration of disinterestedness. Adelman Lavine further responded that it had no written policy regarding representation of a trustee where the estate was insolvent. It also stated that it had no relationship with any of the other parties to the case except as disclosed in its retention application and accompanying declaration.

The Debtor contended, however, that the response of Adelman Lavine that it had no relationship with the UST or the Department of Justice was false because the Fee Application showed that Adelman Lavine attorneys had communicated on numerous occasions with the UST. The Court concludes that merely having a conversation with another party in the case is an insufficient basis to conclude that the two had a relationship.

In addition, the Court concludes that many of the requests were not relevant, not likely to lead to relevant information, or were overly burdensome and mere harassment. For example, the Debtor sought all documentation regarding the payment by Adelman Lavine of vendors for the expenses it requested. In particular, the Debtor demanded copies of all of the firm's phone bills for the Fee Application period and evidence that the phone bills were paid. The Debtor argued that copies of the phone bills, including numbers called, would provide evidence of whether the phone conversations reflected in the Fee Application occurred. The Court concludes that this request was overly burdensome because Adelman Lavine was seeking only $9.17 in reimbursement for phone calls in this case.

Alternatively, the Court concludes that the Debtor was not entitled to all documents evidencing payment by Adelman Lavine of its vendors for expenses for which it seeks reimbursement because the entitlement to expenses is not dependent on whether the

expenses have been paid but only on whether they have been incurred.

Finally, the Debtor requested copies of all pleadings, and drafts of pleadings, that Adelman Lavine had in its files that were mentioned in the Fee Application.  The Court concludes that this request is also overly burdensome because it would encompass the firm's entire file for this case and could include documents protected by the attorney-client privilege or the attorney work product doctrine.  See, e.g., Hickman v. Taylor, 329 U.S. 495, 510-11 (1947) (holding that attorney work product is protected from discovery).  Additionally, all pleadings filed in this case are already available through the Court's electronic case filing system.

Similarly, the Court concludes that the Debtor is not entitled to every draft of the Fee Application to "evidence" that the parties to meetings as reflected in the Fee Application were actually at those meetings.  The Debtor was unable to present any cogent argument, let alone evidence, that the Fee Application was not accurate, thereby failing to justify the expense of reviewing and producing the drafts or other "evidence" to support the statements made in the Fee Application.

The Debtor also sought all documents relating to one of the attorneys' personal compensation from Adelman Lavine, including any compensation he may receive as a shareholder from fees paid

by the Debtor's estate. The Debtor stated that this was relevant because she believed that the attorney was guilty of "extortion and embezzlement" in pursuing, on behalf of the estate, the ATI funds. The Debtor's assertion that the estate is not entitled to the ATI funds is an issue the Court has already decided, against her. Further, the Court concludes that the individual attorney's compensation arrangement as a shareholder of Adelman Lavine is not relevant to the merits of the Fee Application.

Consequently, at the hearing the Court denied the Debtor's request for additional discovery related to the Fee Application and considered the merits of the Fee Application and the Debtor's objection thereto.

    B.    <u>Fee Application</u>

        1.    <u>Debtor's Objections</u>

The Debtor's Objection to the Fee Application is largely an effort to re-litigate the Trustee's Motion to convert the case or the complaint objecting to the Debtor's discharge. For example, the Objection asserts that "the Debtor's bankruptcy case was invalidly converted" and that the "[c]ase actions to date have solely and wholly been based on allegations and lies to date by the Plaintiffs and by and through their representatives, including but not limited to knowingly and maliciously using the Department of Justice's perjuries and lies and Trustee's lies to create a false impression of justifiable activity and

7

activities." It is replete with assertions that the Fee Application "contains scandalous and/or defamatory matter" and "numerous other lies to cover up bad faith and games" of the Trustee and his counsel. There are few real objections to the Fee Application, which are addressed below.

>       a.    "Items that Never Happened/
>             Meetings that Never Occurred"

The Debtor baldly asserts that "[t]he Application contains items that never happened and meetings that never occurred." When asked to provide evidence to support this assertion at the hearing, the Debtor could not identify a single item or meeting that did not occur, merely stating that Adelman Lavine had the burden of proving its entitlement to fees.

The Debtor is correct that a fee applicant has the burden of establishing that it performed services for the estate for which it may be compensated. See, e.g., Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 260 (3d Cir. 1995). Adelman Lavine has presented such evidence in the form of a verified fee application. The verification serves as a representation of the veracity of the statements made therein. See, e.g., In re Bond, 254 F.3d 669, 677 (7th Cir. 2001) (noting that a verification is "a confirmation of the truth and correctness of the time records submitted to the Court" but concluding that in a contested fee application testimony may be necessary).

The verification satisfies the applicant's initial burden of presenting evidence to support its entitlement to fees.  Where an objector or the court seeks to disallow any of the requested fees, it is the objector or court who must identify precisely the deficiency in the application.  See, e.g., In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 846 (3d Cir. 1994) (concluding that if a court after an initial review of a fee application is inclined to disallow any fees, the Bankruptcy Code and due process mandate that the applicant be advised of the court's concerns and be given an opportunity to present evidence addressing those concerns).

In this case, the Debtor asks the Court to disallow Adelman Lavine's fees for work allegedly not done but has not identified any specific meeting or task listed in the Fee Application which the Debtor contends was not held or performed.  Therefore, the Court accepts the verified Fee Application as an accurate representation of what was done and is not inclined to disallow the fees sought for that work.

In addition, the Court is familiar with the tasks that Adelman Lavine performed in the presence of the Court and has reviewed the Fee Application, which it finds accurately reflects those tasks.  Further, the Court is aware generally of the tasks that counsel for a trustee would normally perform in preparation for court appearances and the recitations of such tasks included

in the Fee Application appear to be within the normal range of those activities.  See, e.g., Busy Beaver, 19 F.3d at 854 (concluding that "certainly a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis" of fee applications).

The only specific activity identified by the Debtor that she says did not occur is the review of claims.  The Debtor asserts that the statements in the Fee Application regarding this activity are false because the Debtor had a meeting with counsel for the Trustee in September 2007 to discuss what claims were valid.  At the end of that meeting, the Debtor contends that the Trustee's counsel stated that he would not object to any claims because it was too expensive.

Even if the Court were to accept this statement by the Debtor in her Objection as evidence, the Court would not disallow the fees requested by Adelman Lavine for claims review.  The Fee Application seeks fees related to claims administration and objections totaling only $240.50.  That amount is de minimis and is consistent with the duty of the Trustee and his counsel to make at least a preliminary assessment of the advisability of objecting to claims.  See 11 U.S.C. § 704(a)(5) (stating that "if a purpose would be served, [the trustee shall] examine proofs of

claims and object to the allowance of any claim that is improper."). Additionally, the Fee Application reflects that the time spent by Adelman Lavine on claims review occurred before the Debtor's September 2007 meeting where the Trustee allegedly determined not to pursue objections to claims.

                        b.     "Grossly Exaggerated Intra-Office Billing"

The Debtor also asserts in her objection that the Fee Application contains "grossly exaggerated intra-office billing of ostensible charges" with "[n]o proofs . . . attached." As with the unperformed tasks, the Debtor was unable to present any evidence or even to identify a single instance of this.

The Court's review of the fee application shows that most of the intra-office conferences were .1 or .2 hours in duration. In many instances only one attorney billed for the conference. Rather than evidencing that the conference did not occur, the Court sees this as evidence of appropriate billing judgment. By not billing for one of the participants, Adelman Lavine avoids any allegation that there was a duplication of effort. See, e.g., Zolfo, Cooper, 50 F.3d at 260 (disallowing fees due to duplication of effort); In re Channel Master Holdings, Inc., 309 B.R. 855, 863 (Bankr. D. Del. 2004) (finding no duplication of effort where only one attorney billed for intra-office meetings). Cf. In re Jefsaba, Inc., 172 B.R. 786, 800 (Bankr. E.D. Pa. 1994) (concluding that "[a]ll participants may bill for the time spent

in the intra office conferences with the caveat that the normal requirements of specificity . . . and reasonableness apply.").

It is appropriate for attorneys in a firm to consult each other in the handling of a bankruptcy case.  See, e.g., In re Worldwide Direct, Inc., 259 B.R. 56, 61 (Bankr. D. Del. 2001) (acknowledging that time constraints, volume of work, special expertise or pre-petition involvement in a particular matter all warrant the use of more than one attorney on a matter and do not mandate disallowance of fees as an inappropriate duplication of effort).  In fact, intra-office conferences permit better coordination of effort among the attorneys on the case and allow a junior attorney to benefit from the wisdom of more senior attorneys.  See, e.g., In re Fleming Cos., 304 B.R. 85, 92 (Bankr. D. Del. 2003) (stating that "we agree with counsel for the Debtors in concept that having different attorneys handle different matters can achieve efficiencies" for the estate).

In this case, the total time spent on intra-office conferences, meetings, and review of associates' work was 39.4 of the 258.22 total hours or 15.26% of the total time spent by Adelman Lavine on this case.  (See Exhibit A attached hereto.)  The total fees sought for such intra-office conferences and meetings was $11,299.98 or 19.39% of the total fees sought.  (Id.)  The Court does not find that excessive, particularly given the difficult nature of the Debtor and this case.

2.  <u>Standard of Court's Review</u>

It is well established that a bankruptcy court has an independent obligation to review attorneys' requests for compensation for services rendered, even in the absence of any objection.  See, e.g., <u>Busy Beaver</u>, 19 F.3d at 841; <u>Fleming Cos.</u>, 304 B.R. at 89; <u>In re Angelika Films 57th, Inc.</u>, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998); <u>In re Spanjer Bros., Inc.</u>, 203 B.R. 85, 89 (Bankr. N.D. Ill. 1996).  Moreover, approval of fees is more than just a formality; the Code specifically states that reasonable compensation <u>may be awarded</u> by the court.  11 U.S.C. § 330(a)(1) (emphasis added).  Thus, it is the bankruptcy court's obligation to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."  <u>Busy Beaver</u>, 19 F.3d at 844.

Courts must determine the reasonableness of compensation "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases."  <u>Id.</u> at 840.  On its own initiative, the court may "award compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).  In particular, the "court shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were

not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

Consistent with the Code's provisions, this Court has followed a two-tiered test to determine whether compensation should be allowed. <u>Fleming</u>, 304 B.R. at 90. "First, the court must be satisfied that the attorney performed <u>actual and necessary services</u>. Second, the court must assess a <u>reasonable value</u> for those services." <u>Id.</u> at 90 (emphasis added).

With these principles in mind, the Court has reviewed the Fee Application and determined that the services performed were actual and necessary and the fees and expenses requested are reasonable. The firm seeks $21,963.50 for time spent in analyzing and recovering assets of the estate. As noted above, ATI had collected an account receivable in excess of $115,000. The Debtor sought at every turn to obstruct the Trustee's efforts to recover those funds from her. The cost in doing so should be paid.[3]

Further, the firm seeks $13,310.50 in fees for litigation. This was principally related to the Trustee's complaint objecting

---

[3] If the Debtor were really interested in reducing the amount of administrative fees charged by the Trustee and his counsel, she would be more cooperative in his efforts. If any of the fees sought in the Fee Application are greater than normal, it is because of the Debtor's own actions. Accordingly, the Court is not inclined to reduce them.

14

to the Debtor's discharge because of her actions in this case. The litigation was hard-fought by the Debtor, but the Trustee was ultimately successful. These fees should also be paid.

The remainder of the fees sought (approximately $23,000) represent case administration, claims review, relief from stay proceedings and other typical chores of counsel for the Trustee. The Court has reviewed the Fee Application and finds that all the tasks performed were necessary and the fees requested are reasonable. They will be allowed.

IV. CONCLUSION

For the foregoing reasons, the Court will grant the Fee Application.

An appropriate Order is attached.

BY THE COURT:

Dated: February 29, 2008

Mary F. Walrath
United States Bankruptcy Judge

15

| | Adelman, Lavine, Gold, Schildhorn and Kleban | | | | |
|---|---|---|---|---|---|
| | | | Intra-Office Calls/Meetings | | |
| Attorney Name | Billable Rate | Hours | Hours % Total | Compensation Fees | Compensation % of Total |
| Gary D. Bressler | $405.00 | 2.90 | 1.12% | $1,174.50 | 2.02% |
| | $415.00 | 5.80 | 2.25% | $2,407.00 | 4.13% |
| Steven D. Usdin | $415.00 | 1.00 | 0.39% | $415.00 | 0.71% |
| Raymond Lemisch | $405.00 | 1.60 | 0.62% | $648.00 | 1.11% |
| | $415.00 | 2.10 | 0.81% | $871.50 | 1.50% |
| Bradford J. Sandler, Esquire* | $323.04 | 3.10 | 1.20% | $1,001.43 | 1.72% |
| | $350.00 | 2.80 | 1.08% | $980.00 | 1.68% |
| Alex Moretsky, Esquire | $195.00 | 0.30 | 0.12% | $58.50 | 0.10% |
| Jennifer Hoover, Esquire | $195.00 | 3.40 | 1.32% | $663.00 | 1.14% |
| Jonathan Stermerman, Esquire* | $183.99 | 7.40 | 2.87% | $1,361.55 | 2.34% |
| | $185.00 | 8.60 | 3.33% | $1,591.00 | 2.73% |
| Marie Dooley, Esquire | $175.00 | 0.10 | 0.04% | $17.50 | 0.03% |
| William Hinchman Esquire | $370.00 | 0.30 | 0.12% | $111.00 | 0.19% |
| Total | | 39.40 | 15.26% | $11,299.98 | 19.39% |
| | | | | | |
| Total Compensation Sought | $58,273.40 | | | | |
| | | | | | |
| Total Number of Hours | 258.22 | | | | |
| | | | | | |
| * % Based on Blended Rate | | | | | |

Exhibit A